Susan Denise **TRAHAN**, Plaintiff,

v.

**E.R. SQUIBB & SONS, INC.**, Defendant.

No. 81–3554.

United States District Court,
M.D. Tennessee,
Nashville Division.

Aug. 2, 1983.

Michael Mondelli, James Mondelli, Nashville, Tenn., for plaintiff.

Ray H. Moseley, K. Stephen Powers, Chattanooga, Tenn., for defendant.

## MEMORANDUM

WISEMAN, District Judge.

### I.

Susan Denise Trahan has filed suit against E.R. Squibb and Sons, Inc., for injuries occurring allegedly as the result of her *in utero* exposure to Diethylstilbestrol (DES) manufactured by the defendant E.R. Squibb and Sons, Inc. The plaintiff originally claimed a right to recovery under theories of express and implied warranties, but now agrees that any recovery must be based on negligence or strict liability. Squibb has moved for summary judgment on the strict liability cause of action, claiming that the substantive law of North Carolina controls and that North Carolina's highest court has expressly refused to adopt that doctrine. Trahan argues that Tennessee law, which recognizes strict liability, should apply.

### II.

The plaintiff's mother was apparently a domiciliary and resident of North Carolina

during the entire time she was pregnant with Ms. Trahan. Her doctor prescribed treatment with DES as a means of preventing spontaneous abortion. That treatment and the plaintiff's birth occurred in North Carolina. At the time of her birth no one diagnosed the plaintiff as having a DES related injury. The record is unclear as to whether the lack of such a diagnosis was because the condition had not yet developed, because the condition was not medically discoverable at that time even though it had already developed, or merely because the doctor failed to detect a condition which was discoverable.

Some years after her birth, the plaintiff moved to Tennessee where she became pregnant. Dr. Horace T. Lavely examined the plaintiff in Tennessee on January 15, 1976, before she became pregnant and again on April 10, 1979, when she was three months pregnant. At both of these examinations he found no abnormality of her cervix. (*See* Deposition of Dr. Horace T. Lavely, Jr., p. 7, lines 16–17 and p. 8, lines 7–12). Ms. Trahan's incompetent cervix was not diagnosed until she was 26 weeks pregnant. That diagnosis was made by Dr. Marcia Montgomery during an examination in Tennessee which occurred while the plaintiff was a resident and domiciliary of Tennessee. Ms. Trahan while in Tennessee gave birth and suffered the damages of which she complains.

### III.

If Tennessee substantive law applies, the plaintiff may maintain an action in strict liability because Tennessee has adopted that theory of recovery. *Olney v. Beaman Bottling Co.,* 220 Tenn. 459, 418 S.W.2d 430 (1967). If North Carolina substantive law applies, Ms. Trahan is barred from bringing an action based on strict liability as that jurisdiction does not recognize such a cause of action. *Smith v. Fiber Controls Corp.,* 300 N.C. 669, 268 S.E.2d 504 (1980).

Federal courts in diversity actions must use the law of the forum to determine a choice of law question. *Klaxon v. Stentor*

*Electric Mfg. Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Tennessee has remained steadfast in its adherence to what has been termed the "old rule" of *lex loci delictus* in determining what law is applicable to a tort action and to actions sounding in tort such as strict liability. *Winters v. Maxey,* 481 S.W.2d 755 (Tenn.1972) (upholding viability of *lex loci* rule), *Babcock v. Maple Leaf, Inc.,* 424 F.Supp. 428 (E.D. Tenn.1976) (noting that *lex loci* also applied to actions based on strict liability). The Tennessee Supreme Court expressly has rejected the "interest analysis" or "dominant contacts" rule for choice of law questions. *Winters,* 481 S.W.2d at 758. *Great American Insurance Co. v. Hartford Accident and Indemnity Co.,* 519 S.W.2d 579, 580 (1975).

Generally, *lex loci delictus* requires that the substantive law of the place where the tort occurred be applied. *See Winters v. Maxey,* 481 S.W.2d at 756. For cases in which the act or omission objected to and the resulting injury to the plaintiff occur in different states, however, application of the doctrine becomes more complicated. If the tortious act and resulting injury occur in different jurisdictions, the law in Tennessee, as in most jurisdictions, is that the law of the state where injury was *suffered* controls—not the law of the state where the wrongful act took place. *Koehler v. Cummings,* 380 F.Supp. 1294, 1305 (M.D.Tenn.1971). *See also* Restatement (First) of Conflicts § 377. In *Koehler,* a tortious interference with contract case, the court found that the place of the wrong for purposes of application of *lex loci* was "the state where the last event necessary to make an actor liable for an alleged tort takes place." 380 F.Supp. at 1305. The Court is urged to determine, as controlling, in which state the "last event necessary" occurred to make Squibb liable for its alleged wrongdoing.

### IV.

The defendant argues that the "last event" occurred when the plaintiff's mother ingested DES during her pregnancy in North Carolina. This, according to the de-

fendant, is "the place where the harmful force [took] effect upon the body." Restatement (First) of Conflicts § 377. The defendant, however, alludes to no evidence that the alleged improper development of the plaintiff's cervix occurred immediately upon her mother's ingestion of the drug. The assumption that this effect took place immediately ignores the way in which DES operates on the development of a fetus. The drug may have many effects on an offspring of a mother treated with DES which do not appear until much later in life. This Court takes judicial notice that cervical cancer may be related to DES exposure *in utero,* but not manifest itself until much later in life. Clearly the rights of a plaintiff who developed cervical cancer in Tennessee, after being a resident of Tennessee for many years, would not be controlled by the law of North Carolina where she was exposed *in utero* to DES. The "last event" necessary to create liability is the *development of the condition,* not the exposure to a drug with latent detrimental effects.

That is not to say that an incompetent cervix develops in the same way as cervical cancer. The incompetent cervix may have been extant before Ms. Trahan moved to Tennessee. The defendant, however, has not produced any evidence that the condition did develop in North Carolina.

Plaintiff, on the other hand, has referred to evidence which might be construed as indicating the condition developed in Tennessee after Ms. Trahan became pregnant. In the deposition of Dr. Horace T. Lavely, Jr., he indicates that in his gynecological examination of Ms. Trahan conducted on January 15, 1976—after she had moved to Tennessee—he determined that "everything was perfectly normal." (Deposition of Dr. Lavely, 8, lines 7–12). Dr. Lavely next examined Ms. Trahan April 10, 1979, at the beginning of her pregnancy and did not find any evidence of an abnormality. (Deposition of Dr. Lavely, 17, lines 4–15). The incompetent cervix was not diagnosed until Ms. Trahan was 26 weeks pregnant (Deposition of Dr. Marcia Montgomery, page 20, lines 3–16). The plaintiff would have this Court read these depositions as indicating the doctor's belief that the incompetent cervix did not develop until the plaintiff's pregnancy. That, however, is something of a strained interpretation. More likely, the doctors were simply indicating that the condition was not discovered until she became 26 weeks pregnant. Their depositions, then, are not determinative of when the incompetent cervix developed.

Discovery of an injury is generally not considered to be the "last act" necessary for liability which, under the *lex loci* approach, determines which jurisdiction's law should be applied to an action sounding in tort. The *lex loci* doctrine is derived from the vested right approach which holds that a plaintiff's cause of action "owes its creation to the law of the jurisdiction where the injury occurred and depends for its existence and extent solely on such law." *Winters v. Maxey,* 481 S.W.2d at 756.

If, however, as in this case, there is no clear evidence when the injury actually occurred, state court decisions concerning the effect of a delayed discovery on the accrual of a cause of action for statute of limitations purposes provides guidance as to the public policy of Tennessee.

In the recent case of *Ameraccount Club, Inc. v. Hill,* 617 S.W.2d 876 (Tenn.1981), the court determined that, for purposes of deciding when a one year statute of limitations started to run, a cause of action accrued when the plaintiff discovered or reasonably should have discovered an injury caused by the defendant's negligence. At issue in *Ameraccount* was the timeliness of a malpractice action brought against several attorneys for failing to properly search U.S. Patent Office records and for failing to follow proper filing procedures. The action was brought more than one year from the time the defendant, by its president's own testimony, discovered the defendant's negligence, but within one year of the Patent Office's final denial of their application. The lower courts had granted the defendant's motions for summary judgment on the grounds that the action was instituted more than one year after the action had accrued

and was thus barred by T.C.A. § 28–304 (now § 28-3–104). The Tennessee Supreme Court in *Ameraccount,* holding that a cause of action accrues when injury—and not negligence—is discovered, held that:

> The Court of Appeals erred in holding that the plaintiff's cause of action accrued and the statute of limitations began to run when the plaintiff became aware of the negligence of the defendant attorneys; still more was required, viz., damage or injury to the plaintiff resulting from that negligence. (footnote omitted).

617 S.W.2d at 878.

The court also indicated the continuing validity of its decision in *Teeters v. Curry,* 518 S.W.2d 512 (Tenn.1974), where they held that a cause of action does not accrue for statute of limitation purposes "until the negligent injury is, or should have been discovered." 518 S.W.2d at 516. According to that court, the issue it faced was "When does the cause of action accrue?" 518 S.W.2d at 514. The court quotes *Layton v. Allen,* 246 A.2d 794 (Del.1968), with favor.

> Upon the basis of reason and justice, we hold that when an inherently unknowable injury, such as is here involved, has been suffered by one blamelessly ignorant of the act or omission and injury complained of, and the harmful effect thereof develops gradually over a period of time, the injury is "sustained" . . . when the harmful effect first manifests itself and becomes physically ascertainable.

*Teeters,* 518 S.W.2d at 516.

■ This Court judicially notes that the incompetency—or better put, the weakness or strength—of a woman's cervix is a medically immaterial fact until its utility is called into play by the circumstance of pregnancy. The biological function of the cervix is to retain the fetus in the uterus. Thus, injury neither occurs, nor is it normally subject to discovery, until pregnancy.

## V.

Of even greater significance, however, in the determination of this matter is the recognized exception to the *lex loci delictus* rule. In the majority opinion in *Winters,* the court said:

> The public policy exception to this rule is where the law of the jurisdiction where the tort occurred is against good morals or natural justice, or for some other reason, its enforcement would be prejudicial to the general interests of our citizens.

481 S.W.2d at 756.

Justice Humphreys, in his dissent in *Winters,* expressed a preference for the interest analysis approach, but based his dissent upon his opinion that the Alabama guest statute was contrary to good morals, natural justice and the express public policy of Tennessee. 481 S.W.2d at 759–60.

Chief Justice Fones, in his opinion in *Great American Insurance Co. v. Hartford Accident and Indemnity Co.,* 519 S.W.2d 579 (Tenn.1975), again reiterated the public policy exception to the *lex loci* rule, although rejecting its application to a case of participation between an owner's liability insurance carrier and that of a driver.

In the case of 402A actions, however, the public policy of this State has been more clearly established. In 1967, the Tennessee Supreme Court said:

> We recognize that strict liability exists upon the manufacturer of a product without fault on his part, under the circumstances outlined in 2 Restatement, Second, Torts § 402–A (1965). This result was foreshadowed by the opinion of this Court in the case of *Ford Motor Company v. Lonon,* Tenn. [217 Tenn. 400], 398 S.W.2d 240 (1966). This is a development in the law of torts which seems justified where the conditions specified in the Restatement are established by proof.

*Olney v. Beaman Bottling Co.,* 418 S.W.2d at 431.

By adopting the Restatement recommendation, one must assume that the Court was impressed with its rationale.

> c. On whatever theory, the justification for the strict liability has been said to be that the seller, by marketing his product for use and consumption, has undertaken and assumed a special responsibility to-

ward any member of the consuming public who may be injured by it; that the public has the right to and does expect, in the case of products which it needs and for which it is forced to rely upon the seller, that reputable sellers will stand behind their goods; that *public policy* demands that the burden of accidental injuries caused by products intended for consumption be placed upon those who market them, and be treated as a cost of production against which liability insurance can be obtained; and that the consumer of such products is entitled to the maximum of protection at the hands of someone, and the proper persons to afford it are those who market the products.

Restatement (Second) of Torts § 402 A (1965) (emphasis added).

When sitting in a diversity case, and there being no controlling Tennessee law on the point, it is the duty of this Court to divine what the Supreme Court of the State would do when presented with the question. Unfortunately, there is no mechanism in Tennessee for certification of a question to the Supreme Court.

 Having recognized the public policy exception to *lex loci delictus,* the question is whether the Supreme Court of Tennessee would consider the principle of 402 A of such a compelling public policy concern as to declare this an exception. This Court believes that it is so compelling and that the Tennessee Supreme Court will so declare it.

There can be no more basic a public policy decision than one which allocates risk and social cost. This is the underlying concern and decision of 402 A. Here, a large national corporation doing business in all states does not make its marketing decisions on the basis of whether a state has or has not adopted 402 A. Product liability insurance, or self-insurance reserves, are for protection of the consumer, and financial protection of the company, generally, and are not dependent upon where a consumer may live, become pregnant, have a baby, or the injury become manifest. On the other hand, Tennessee has the strongest public

policy reasons for protecting its citizens against ingestion of dangerous prescription drugs and also for allocating the social cost of resulting injuries where the consumer is a resident of this state at the time of the manifestation of the injury. Damages, if any, to this plaintiff occurred in Tennessee. Hospital bills and doctor bills occurred in Tennessee. Economic loss results in Tennessee, and the risk of plaintiff or others becoming a public charge occurs in Tennessee. It is Tennessee that has decided that the "*burden* of accidental injuries caused by products ... be placed upon those who market them...." Although North Carolina has made no like decision, neither does North Carolina assume or bear any such *burden* in this or similar cases.

For all of the foregoing reasons, the motion for summary judgment of defendant Squibb is denied. The case will proceed to trial on the issues of negligence and strict liability.