Kimberly M. MYERS, Personal Representative and Executrix of Timothy Jay Myers, Deceased, et al.

v.

HAYES INTERNATIONAL CORPORATION, United Technologies Corporation, General Motors Corporation, Lockheed Corporation and Pacific Scientific Corporation.

Nos. 3-87-0702 to 3-87-0706.

United States District Court,
M.D. Tennessee,
Nashville Division.

Nov. 18, 1988.

Fred E. Cowden, Jr., Nashville, Tenn., Stephen P. Watters, Roe & Associates, Minneapolis, Minn., Jeffrey S. Henry, Murfreesboro, Tenn., for plaintiffs.

Lew Conner, Waller, Lansden, Dortch & Davis, Robert E. Boston, Joseph A. Woodruff, James W. White, Nashville, Tenn., for General Motors Corp.

## MEMORANDUM

WISEMAN, Chief Judge.

This is a products liability action arising out of a plane crash which occurred on the Kentucky side of the Fort Campbell mili-

tary installation.[1] The crash happened on September 9, 1986, while the five-man crew of a C–130A military aircraft was performing a series of "touch and go" maneuvers at Fort Campbell's airfield, which also is located within the boundaries of Kentucky. The maneuvers were part of a routine training exercise conducted by the Tennessee Air National Guard (T.A.N.G.). The aircraft was manufactured and delivered to the U.S. Government in 1957, assigned to T.A.N.G. and based in Nashville, where the ill-fated flight began and was scheduled to end. The crewmen were all members of T.A.N.G. and residents of Tennessee. Three of them were killed; two were injured.

In originally separate but now consolidated suits, the two injured crewmen and the widows of the three deceased seek recovery under theories of negligence, breach of warranty, strict liability in tort and "violation of the Consumer Protection Act."[2] Plaintiffs name as defendants several corporations who allegedly played some role in the design, redesign, manufacture, remanufacture, maintenance, inspection, overhaul, rebuilding, sale, and/or distribution of at least some part of the aircraft which crashed. This Court has diversity jurisdiction under 28 U.S.C. § 1332.

Defendant Lockheed Corporation, who is at least the original manufacturer of the aircraft, has moved for summary judgment on the grounds that this action is barred by Tennessee's statute of repose for products liability actions.[3] In support, Lockheed and the other named defendants have submitted thorough and thoughtful briefs, the substance of which will be set forth in

---

1. Fort Campbell is a federal military base which straddles the Kentucky–Tennessee border.

2. The suits were filed on September 4, 1987, less than one year after the accident.

3. *See* Tenn.Code Ann. § 29–28–103(a) (1980), which reads:

 Any action against a manufacturer or seller of a product for injury to person or property caused by its defective or unreasonably dangerous condition must be brought within the period fixed by §§ 28–3–104, 28–3–105, 28–3–202 and 47–2–725, but notwithstanding any exceptions to these provisions it must be

 brought within six (6) years of the date of injury, in any event, the action must be brought within ten (10) years from the date on which the product was first purchased for use or consumption, or within one (1) year after the expiration of the anticipated life of the product, whichever is the shorter, except in the case of injury to minors whose action must be brought within a period of one (1) year after attaining the age of majority....

 Defendants argue that the aircraft was first purchased in 1957 and therefore no injury occurring after 1967 is actionable under Tennessee law.

**620**

more detail below. The plaintiffs have responded in kind to support their argument that the statute of repose is substantive and does not apply where, as here, the action is controlled by Kentucky substantive law. For the reasons stated below, Lockheed's motion is denied.

### A. Choice of Law

■ It is elementary that in a diversity case, this Court is obligated to apply the law of the forum state, including the forum's choice of law rules. *See, e.g., Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938); *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496–97, 61 S.Ct. 1020, 1021–22, 85 L.Ed. 1477 (1941); *Day & Zimmermann, Inc. v. Challoner*, 423 U.S. 3, 4–5, 96 S.Ct. 167, 167–68, 46 L.Ed.2d 3 (1975); *Mackey v. Judy's Foods, Inc.*, 654 F.Supp. 1465, 1468 (M.D.Tenn.1987) (Wiseman, C.J.). Equally as elementary is Tennessee's steadfast adherence to the traditional rule of *lex loci delictus* in determining which state's substantive law is applicable to actions sounding in tort. *See, e.g., Trahan v. E.R. Squibb & Sons, Inc.*, 567 F.Supp. 505, 507 (M.D.Tenn.1983); *Babcock v. Maple Leaf, Inc.*, 424 F.Supp. 428 (E.D.Tenn.1976) (applying rule to actions based on strict liability theory); *Winters v. Maxey*, 481 S.W.2d 755, 756–59 (Tenn.1972). Quite simply, *lex loci delictus* holds that the substantive law of the place where the tort occurs applies. *E.g., Winters*, 481 S.W.2d at 756. The Tennessee Supreme Court has rejected specifically the "dominant contacts" choice of law rule in favor of *lex loci. Trahan*, 567 F.Supp. at 507. *See Winters*, 481 S.W.2d at 756–59; *Great Amer. Ins. Co. v. Hartford Acc. & Indemn. Co.*, 519 S.W.2d 579, 580 (Tenn.1975) (reaffirming viability of *Winters* and *lex loci contractus* rule). The *lex loci* rule is derived from the vested rights doctrine. According to the vested rights doctrine, "a plaintiff's cause of action 'owes its creation to the law of the jurisdiction where the injury occurred and depends for its existence and extent solely

on such law.'" *Trahan*, 567 F.Supp. at 508, *quoting Winters*, 481 S.W.2d at 756; *Babcock*, 424 F.Supp. at 432. Thus, where the tortious act and the resulting injury occur in different states, the traditional rule in Tennessee is that the substantive law of the state where the injury occurred controls. *E.g., Trahan*, 567 F.Supp. at 507; *Babcock*, 424 F.Supp. at 432–33; *Koehler v. Cummings*, 380 F.Supp. 1294, 1305 (M.D.Tenn.1971).

Nevertheless, defendants argue that this case presents occasion for diverging from the long-standing rule of *lex loci.* They claim that the language of both *Winters*, 481 S.W.2d at 758–59, and *Great American*, 519 S.W.2d at 580, left open the possibility of adopting the "dominant contacts" rule in light of future legal developments. Specifically, the court in *Winters* stated that the strongest reason for not repudiating *lex loci* was that the court was unable to discern any "uniform common law of conflicts" which had arisen under the "dominant contacts" approach and which could take the place of the uniform *lex loci* rule. 481 S.W.2d at 758. Subsequently, in *Great American* the court found that the dominant contacts rule had made "no significant progress toward uniformity since *Winters*," and thus refused to adopt the newer rule. 519 S.W.2d at 581.

According to defendants, the uniformity for which the court was waiting has emerged, at least in interstate aviation cases. In addition to calling the court's attention to the number of jurisdictions which have adopted and applied the dominant contacts approach since *Winters* and *Great American*,[4] the defendants rely upon *Halstead v. U.S.*, 535 F.Supp. 782 (D.Conn.1982), *aff'd sub nom. Saloomey v. Jeppesen & Co.*, 707 F.2d 671 (2d Cir.1983). *Halstead* arose out of a West Virginia plane crash which killed the pilot and the passenger, both Connecticut residents. The crash occurred during a flight from Dallas, Texas, to Danbury, Connecticut, and was allegedly caused by the pilot's

---

**4.** Specifically, defendants point to *Bishop v. Florida Spec. Paint Co.*, 389 So.2d 999 (Fla. 1980); *Adams v. Buffalo Forge Co.*, 443 A.2d 932 (Me.1982); *Gutierrez v. Collins*, 583 S.W.2d 312 (Tex.1979); and *O'Connor v. O'Connor*, 201 Conn. 632, 519 A.2d 13 (1986).

reliance on defective maps. The maps were manufactured and sold in Colorado by one of the defendants, a Colorado corporation. 535 F.Supp. at 784–85. Noting that the site of the crash was wholly fortuitous, the court refused to apply West Virginia law, even though Connecticut traditionally followed the *lex loci* conflicts rule. Instead, the court held that those particular circumstances were compelling enough to justify departing from the traditional rule. Accordingly, it predicted that a Connecticut court would apply the dominant contacts test, and held that Colorado law was controlling. *Id.* at 786–89.

The Second Circuit affirmed the district court's prediction. It agreed that the particular circumstances of the case presented good reasons to replace *lex loci* with the dominant contacts test in aviation accidents. *Saloomey*, 707 F.2d at 674–75. The court stated;

> In contrast to automotive travel, aviation accidents—especially those occurring in interstate air travel—more frequently pose situations in which the place of actual injury is wholly fortuitous and unimportant....
>
> \* \* \* \* \* \*
>
> Invocation of the *lex loci delicti* rule in aviation generated wrongful death actions often produces unpredictable and undesirable results; the locale of injury may well have no connection to other relevant factors....
>
> ... The principles underlying [the dominant contacts approach] harmonize with the concerns voiced by the court in *Gib-*

son [*v. Fullin*, 172 Conn. 407, 374 A.2d 1061 (1977) ]; they include certainty and predictability of result as well as ease in determination and application of substantive law.

*Id.* at 675–76 (citations omitted).

Although *Saloomey* expresses succinctly one court's conclusion that the dominant contacts test is more appropriate than *lex loci* as a choice of law rule in tort actions arising out of interstate air travel, it does not appear to this court that *Saloomey* satisfies the concerns expressed by the Tennessee Supreme Court in *Winters* and *Great American*. *Lex loci* results in unpredictability only insofar as one cannot predict beyond a degree of probability before embarking on an interstate journey if and where an accident will occur. On a trip from Dallas to Danbury via West Virginia and a dozen other states, the probability that the accident will occur in West Virginia is no greater or less whether one travels by plane, train or automobile. In other words, taken alone, the mere fact that the locus of an accident may be fortuitous is not sufficient grounds for distinguishing air travel from auto travel.[5]

Nor does such fortuity highlight the concern for predictability expressed in *Winters* and *Great American*. In those opinions, the Tennessee Supreme Court allowed that it may change its stance when there emerged from the dominant contacts analysis sufficiently clear principles of decision that two courts presented with similar facts would most likely reach consistent conclusions.[6] *See Winters*, 481 S.W.2d at

---

**5.** Even if this court were to agree that interstate air travel presented sufficiently unique concerns to justify the creation of a separate category of torts subject to a contacts analysis, it is not at all clear that this case would fall into that category. Unlike a cross-country flight where a plane merely passes through the air-space of several states, this flight flew into Kentucky to perform maneuvers there. Although the flight was scheduled to begin and end in Nashville, at least a substantial portion of the training maneuvers which occasioned the flight were to be performed at the airfield inside Kentucky's boundaries. Thus, except for the mode of transportation, it is difficult to distinguish this flight from a day trip by car from Tennessee to Kentucky and back.

**6.** Defendants point out that four more jurisdictions have adopted some form of the newer rule since *Winters*. This argument, however, does not advance the ball. In *Winters*, the court noted that sixteen jurisdictions, including neighboring Kentucky, applied a contacts analysis. 481 S.W.2d at 758. Nevertheless, it retained the *lex loci* approach. If the court was waiting for more jurisdictions to adopt the new analysis, its patience can be understood only in light of its query whether a new uniform rule of conflicts would emerge. Defendants have succeeded only in demonstrating that the dominant contacts is less the minority rule than it was at the time of *Winters*.

758–59; *Great American,* 519 S.W.2d at 580. Defendants have failed to demonstrate the development of such principles. For example, defendants suggest that one reason this court should apply Tennessee law is that a Kentucky court would do so if plaintiffs had filed their claim in that state. In *Arnett v. Thompson,* however, the court considered whether Ohio or Kentucky law should control an action arising out of an automobile accident involving Ohio residents and occurring in Kentucky. Applying a dominant contacts analysis, the court held that the mere fact that the accident occurred in Kentucky was, standing alone, enough contact to justify the application of Kentucky law. 433 S.W.2d 109 (Ky.1968). Either defendants are urging this Court to adopt a different method of analysis than that used by Kentucky courts or they are urging this Court to apply the same method but with different results. This apparent inconsistency is precisely the problem with the dominant contacts rule which the court in *Winters* identified as its reason for retaining *lex loci delictus. See* 481 S.W.2d at 758–59.

In *Day & Zimmermann, Inc. v. Challoner,* the Supreme Court stated:

> [T]he conflict-of-laws rules to be applied by a federal court ... must conform to those prevailing in [the forum state's] courts. A federal court is not free to engraft onto those state rules exceptions or modifications which may commend themselves to the federal court, but which have not commended themselves to the state in which the federal court sits.

423 U.S. 3, 4, 96 S.Ct. 167, 168, 46 L.Ed.2d 3 (1975). Thus, even if this Court were convinced that the contacts approach is superior to *lex loci,* we are not the proper mechanism to initiate the divergence from such a clearly established conflict-of-laws rule. Rather, our proper inquiry is whether the circumstances of this case are so unique that the applicability of the traditional rule is questionable, or whether sufficiently uniform rules of decision have emerged to satisfy the concerns expressed in *Winters* and *Great American.* This inquiry has led the Court to conclude that in this case *lex loci delictus* is the applicable conflict-of-law rule under Tennessee law. The accident, injuries and deaths occurred in Kentucky. Therefore, the substantive law of Kentucky controls this claim.

**B.** *Statute of Repose*

 Deciding that Kentucky substantive law controls is only the first step. The second is determining whether the action is barred nevertheless by Tennessee's statute of repose in products liability actions. This second step is premised on the traditional rule in Tennessee that although the controlling substantive law is *lex loci,* the law of the forum controls procedure. *See, e.g., Sherwin–Williams Co. v. Morris,* 25 Tenn. App. 272, 156 S.W.2d 350 (1941). On the question of whether Tennessee's statute of repose applies to this action, the parties join issue on two basic points. First, they dispute whether the court's inquiry should focus on the nature of Tennessee's statute of repose or the analogous Kentucky statute. Second, they disagree as to whether Tennessee's statute of repose is substantive or procedural.

On the first issue, plaintiffs point to a federal case directly on point, where the court was faced with choosing between Illinois and Pennsylvania law. *See Anabaldi v. Sunbeam Corp.,* 651 F.Supp. 1343 (N.D. Ill.1987). The plaintiffs were burned when a hot oil fryer manufactured and sold by defendant tipped over. The plaintiffs were residents of and the injuries occurred in Pennsylvania, but suit was brought in Illinois where the defendant had its principal place of business. *Id.* at 1344. Illinois has a twelve-year statute of repose in products liability actions which would have barred plaintiffs' claims. Applying Illinois conflicts rules, the court held that Pennsylvania substantive law controlled and that the Illinois statute of repose was substantive. Thus, it prohibited Sunbeam from asserting the statute of repose as an affirmative defense. *Id.* at 1345.

Defendants argue, on the other hand, that the proper inquiry should focus on the analogous Kentucky statute. They con-

tend that Tennessee treats a foreign statute of limitation as "substantive" only if it is part of the same statute that creates the cause of action in question, or it appears in a different statute but is directed to the statutory liability so specifically as to warrant saying that it qualified the right. *See, e.g., Davis v. Mills*, 194 U.S. 451, 454, 24 S.Ct. 692, 693, 48 L.Ed. 1067 (1904); *Mackey*, 654 F.Supp. at 1469; *P & E Elec., Inc. v. Utility Supply of Amer. Inc.*, 655 F.Supp. 89, 94 (M.D.Tenn.1986).[7] Identifying Ky.Rev.Stat.Ann. 411.310(1) as the relevant statute, defendants argue that it is part of Kentucky's Products Liability Act which merely codified a pre-existing common law right of action. Further, they contend that although the statute creates a rebuttable presumption, it does not limit the time for bringing an action. They conclude, therefore, that the Kentucky statute is merely procedural and that the Tennessee statute of repose must apply.

Even assuming arguendo that Ky.Rev. Stat.Ann. § 411.310 is the relevant Kentucky statute and that the defendants have characterized it correctly, the conclusion they draw does not necessarily follow.[8]

Finding the Kentucky statute to be procedural proves only that it does not apply to this action. It does not entail that Tennessee's statute of repose does apply. The defendants' conclusion follows only if the *Tennessee* statute is procedural. Thus, even if the court were to pursue the path of analysis proffered by defendants, logic requires an inquiry like that reflected in *Anabaldi*, viz. whether the Tennessee statute of repose is substantive or procedural.[9]

Unfortunately, no Tennessee court has decided this issue, nor is there a mechanism for certifying such questions to the Tennessee Supreme Court. Of the courts which have considered this issue, however, the clear majority has held that statutes of repose are substantive. *President & Dir. of Georgetown College v. Madden*, 660 F.2d 91, 94 (4th Cir.1981). *See, e.g., Goad v. Celotex Corp.*, 831 F.2d 508, 511 (4th Cir.1987); *Wayne v. T.V.A.*, 730 F.2d 392, 401 (5th Cir.1984), *cert. denied*, 469 U.S. 1159, 105 S.Ct. 908, 83 L.Ed.2d 922 (1985) (addressing Tennessee's products liability statute of repose); *Anabaldi v. Sunbeam Corp.*, 651 F.Supp. at 1345; *Nieman v.*

---

**7.** A foreign statute of limitations may also control if it is encompassed by Tennessee's borrowing statute, Tenn.Code Ann. § 28–1–112. The borrowing statute, however, is not applicable to this cause of action.

**8.** In fact, the defendants' focus on § 411.310 is misplaced. Rather, the proper inquiry under the defendants' proposal should focus on the Kentucky statutes of limitations for products liability actions. Under Kentucky law, the limitations period depends on the underlying theory. Products liability actions based on breach of warranty carry a four-year limitation, while those based on strict liability or negligence have a one-year limitation. Ky.Rev.Stat.Ann. § 355.2–725 & 413.140(1)(b); *Caudill v. Arnett*, 481 S.W.2d 668 (Ky.1972); Kentucky Jurisprudence, Torts § 21–16(a) & (b). These limitations plainly would not qualify as "substantive" for the purposes of determining whether they would apply to a claim in a Tennessee court.

**9.** This analytical shortcoming in defendants' argument is apparent from a careful reading of the cases upon which they rely. First of all, they correctly point out that in *Mackey*, 654 F.Supp. 1465, this court found that Alabama's statutes of limitations were procedural, and consequently applied the statute of limitation for the Tennessee Consumer Protection Act, Tenn. Code Ann. § 47–18–110. *See Mackey*, 654

F.Supp. at 1469, 1471–72. Defendants also note correctly that § 47–18–110 is strikingly similar to the products liability statute of repose in that it requires an action to be brought within one year after discovery of the unlawful act, but in no event after four years from the date of the transaction. What defendants do not acknowledge, however, is that we held specifically that the action was barred because it was not filed within one year after the unlawful act was discovered. *Id.* at 1472. In other words, the four year ceiling, or "repose" portion of the statute was inconsequential. The action was barred because of that portion of the statute which operates as a traditional statute of limitation. Secondly, *McDaniel v. Mulvihill*, 196 Tenn. 41, 263 S.W.2d 759 (1953), considered whether the Mississippi or Tennessee statute of limitations applied. Similarly, at issue in *Hutto v. Benson*, 110 F.Supp. 355 (E.D.Tenn.1953), *rev'd*, 212 F.2d 349 (6th Cir.1954), *cert. denied*, 348 U.S. 831, 75 S.Ct. 52, 99 L.Ed. 655, was the applicability of Tennessee's one-year statute of limitations in personal injury suits to an action arising under Texas substantive law. Reliance on these cases merely begs the question of whether the ten-year statute of repose is indistinguishable from a typical statute of limitations which begins to run when a cause of action accrues.

*Press Equip. Sales Co.,* 588 F.Supp. 650 (S.D.Oh.1984); *Bolick v. American Barmag Corp.,* 293 S.E.2d 415, 417 (N.C.1982). *But see, e.g., Habenicht v. Sturm, Ruger & Co., Inc.,* 660 F.Supp. 52 (D.Conn.1986). This majority rule rests upon a distinction between statutes of repose and traditional statutes of limitation. Ordinarily, statutes of limitation set shorter time periods which run from the time the cause of action accrues, rather than from an arbitrary time such as the date of purchase. *Wayne,* 730 F.2d at 401, *citing* F. McGovern, *The Variety, Policy and Constitutionality of Product Liability Statutes of Repose,* 30 Am.U. L.Rev. 579, 584 (1981). Where either common or statutory law provides that the coalescence of certain elements give rise to a cause of action, a statute of limitation limits the time in which a potential plaintiff may pursue his remedy in the courts. *See, e.g., Chase Sec. Corp. v. Donaldson,* 325 U.S. 304, 314, 65 S.Ct. 1137, 1142, 89 L.Ed. 1628 (1945). With statutes of repose, on the other hand, injury, or some other essential element which gives rise to the cause of action, is not a factor in computing the running of the time period. Thus, the statute may bar the right of action altogether if the injury occurs after the time period has run. *E.g., Wayne,* 730 F.2d at 401–02. As the Fourth Circuit has stated succinctly:

Statutes of repose make the filing of suit within a specified time a substantive part of plaintiff's cause of action. [Citation omitted.] In other words, where a statute of repose has been enacted, the time for filing suit is engrafted onto a substantive right created by law. The distinction between statutes of limitation and statutes of repose corresponds to the distinction between procedural and substantive laws. Statutes of repose are meant to be "a *substantive definition of rights as distinguished from a proce-*

*dural limitation on the remedy used to enforce rights." Bolick,* 293 S.E.2d at 418, *quoting* Stevenson, *Products Liability and the Virginia Statute of Limitations—A Call for the Legislative Rescue Squad,* 16 U.Rich.L.Rev. 323, 334 n. 38 (1982).

*Goad,* 831 F.2d at 511. (Emphasis added.)

The Fifth Circuit has found Tennessee's statute of repose to be substantive and, therefore, applicable to an action where Mississippi's conflict-of-law rules dictated that Tennessee substantive law control. *See Wayne,* 730 F.2d at 400–02. In so holding, the court noted the opinion in *Buckner v. GAF Corp.,* 495 F.Supp. 351, 355 (E.D.Tenn.1979), *aff'd,* 659 F.2d 1080 (6th Cir.1981), where the district court distinguished Tennessee's statute of repose from a normal statute of limitation. *Wayne,* 730 F.2d at 401. Nevertheless, defendants argue that authority in the Sixth Circuit contradicts both the majority rule and the holding in *Wayne.* They contend that *Murphree v. Raybestos Manhattan, Inc.,* 696 F.2d 459 (6th Cir.1982), and *Clay v. Johns–Manville Sales Corp.,* 722 F.2d 1289 (6th Cir.1983), *cert. denied,* 467 U.S. 1253, 104 S.Ct. 3537, 82 L.Ed.2d 842 (1984), establish that the statute of repose is procedural. The issue in *Murphree* was whether, under Article I, Section 20 of Tennessee's Constitution, a Tennessee court would apply a vested rights doctrine to prevent the retroactive application of the asbestos exception to the products liability statute of repose. In holding that the Tennessee court will no longer use the doctrine to prevent the legislature from ameliorating the harshness of a rule that bars a plaintiff's claim before he discovers it, the court stated that its decisions brings "Tennessee law in line with federal law on vested rights as applied to statutes of limitation...." *Murphree,* 696 F.2d at 462.[10]

10. The court then cited to several opinions addressing the nature of statutes of limitations. The United States Supreme Court has long since rejected old doctrines of substantive due process which said that a liberalizing change in a statute of limitations abridges vested rights. *See Chase Securities Corp. v. Donaldson,* 325 U.S. 304, 65 S.Ct. 1137, 89 L.Ed. 1628 *reh. denied,* 325 U.S. 896, 65 S.Ct. 1561, 89

L.Ed. 2006 (1945) (statutory amendment abolishing limitations defense did not deprive defendant of any right); *Campbell v. Holt,* 115 U.S. 620, 6 S.Ct. 209, 29 L.Ed. 483 (1885) (statutes of limitations go to matters of remedy rather than destruction of fundamental rights).
*Clay* simply incorporated this portion of *Murphree,* 722 F.2d at 1291–92.

According to defendants, the holding and language in *Murphree* groups statutes of repose and statutes of limitation as procedural devices which the legislature is free to restrict or liberalize at its whim. But the mere fact that the legislature may restrict or liberalize a statute of repose does not render it procedural. Legislatures may alter or eliminate common law causes of action or create new rights. The Supreme Court has stated:

> Our cases have clearly established that '[a] person has no property, no vested interest, in any rule of the common law.' The 'Constitution does not forbid the creation of new rights, or the abolition of old ones recognized by the common law, to attain a permissible legislative object,' despite the fact that 'otherwise settled expectations' may be upset thereby. Indeed, statutes limiting liability are relatively in commonplace and have consistently been enforced by the courts.

*Mathis v. Eli Lilly Co.*, 719 F.2d 134, 138 (6th Cir.1983), *quoting Duke Power Co. v. Carolina Envir. Study Group*, 438 U.S. 59, 88 n. 32, 98 S.Ct. 2620, 2638 n. 32, 57 L.Ed.2d 595 (1978). (Citations omitted.)

Indeed, the change effected by Tennessee's statute of repose was substantive. The original version of the statute was passed in 1978, and allowed no action to be brought more than ten years after the allegedly defective goods were made, regardless of when an injury occurred. Three years earlier, however, the Tennessee Supreme Court had finally settled that the cause of action in a tort or product liability action accrued "when the injury occurs or is discovered, or when in the exercise of reasonable care and diligence, it should have been discovered." *McCroskey v. Bryant Air Cond. Co.*, 524 S.W.2d 487, 491 (Tenn.1975). Therefore, through the statute of repose the legislature ruled that

where an injury occurs more than ten years after a product is made, no cause of action accrues. This legislative rule can hardly be characterized as a procedural device limiting the time in which a plaintiff may seek a remedy in court. As the court in *McCroskey* said:

> Except in a topsy-turvy land, you can't die before you are conceived, or be divorced before ever you marry, or harvest a crop never planted, or burn down a house never built, or miss a train running on a nonexistent railroad. For substantially the same reasons ... a statute of limitation does not begin to run against a cause of action before that cause of action exists, i.e., before a judicial remedy is available to the plaintiff.

524 S.W.2d at 489, *quoting Dincher v. Marlin Firearms Co.*, 198 F.2d 821, 823 (2d Cir.1952). Rather, by definition, Tennessee's statute of repose begins to run before a cause of action accrues and reflects the substantive determination that after ten years, no cause of action may accrue.

In short, Tennessee's statute of repose is part of Tennessee's substantive law. Plaintiffs have a cause of action under Kentucky law, but, because of the statute of repose, not under Tennessee law. *Lex loci* compels this Court to apply Kentucky substantive law. Thus, plaintiffs' cause of action is not barred by the ten-year statute of repose.[11]

### C. *Public Policy Exception*

■ The final step in the analysis is to determine whether the difference between Kentucky and Tennessee law presents occasion for applying the public policy exception to *lex loci*. The public policy exception is not a back door through which some form of significant contacts analysis may enter.[12] Rather, as stated in *Winters*,

**11.** Plaintiffs filed their actions less than one year after the accident, satisfying the statute of limitation portion of Tenn.Code Ann. § 29–28–103.

**12.** Because the court finds that the public policy exception is distinct from a dominant contacts analysis, we do not accept the reasoning of *Boudreau v. Baughman*, 86 N.C.App. 165, 356

S.E.2d 907 (1987), which defendants have urged upon us. Although that case presents similar facts, the state court placed great reliance upon the dominant contacts test as enunciated in Restatement (Second) of Conflict of Laws § 6(2) (1971). The Tennessee Supreme Court, however, has given no indication that it finds these factors persuasive in resolving conflicts of laws

"The public policy exception to this rule is where the law of the jurisdiction where the tort occurred is against good morals or natural justice, or for some other reason, its enforcement would be prejudicial to the general interests of our citizens." 481 S.W.2d at 756. This Court has recognized that the public policy exception to *lex loci* may apply in product liability actions. *See Trahan*, 567 F.Supp. at 509–10. In *Trahan*, the court was faced with deciding whether to apply Tennessee or North Carolina law to a claim arising out of the plaintiffs' exposure to DES and the resulting damage to her cervix. We found that the woman's injury was suffered in Tennessee, and that Tennessee substantive law should therefore control. *Id.* at 508–09. Tennessee law allowed the plaintiff to proceed under a strict liability theory; North Carolina did not. In light of this wide divergence between the two jurisdictions in allocating risk between the manufacturers and users of prescription drugs, the court stated in *dicta* that even if the injury were suffered in North Carolina the public policy exception to *lex loci* should apply. *Id.* at 509–10.

The circumstances in *Trahan* are distinct from those currently before the Court. The policy of both the Kentucky and Tennessee legislatures is the same: both sought to place some restrictions on liability, balanced against concerns for compensating persons injured by defective products. *Compare* Tenn.Code Ann. §§ 29–28–101 to –108 (1980) *with* Ky.Rev.Stat.Ann. § 411.300–411.350 (Baldwin 1981). *See* Ch. 703, 1978 Tenn.Pub. Acts 468, 468–69; *Anderson v. Black & Decker U.S., Inc.*, 597 F.Supp. 1298, 1300–01 (E.D.Ky.1984). Toward that end, both states permit actions based on strict liability, but impose certain rebuttable presumptions in favor of the

manufacturers and sellers. *See* Tenn.Code Ann. § 29–28–104 *and* Ky.Rev.Stat.Ann. § 411.310. In both states, the manufacturer or seller is not liable if the product is unreasonably dangerous because of plaintiff's improper maintenance or undue alteration.[13] In spite of their similar concerns, it is not surprising that the legislatures arrived at some different conclusions about how to achieve their goals. Specifically, in light of the competing concerns and several provisions in the respective Products Liability Acts, the Tennessee legislature saw fit to impose the bar to litigation contained in Tenn.Code Ann. § 29–28–103; Kentucky defined a rebuttable presumption that products beyond a certain age are safe. *See* Ky.Rev.Stat.Ann. § 411.310(1). Although Kentucky's legislative decision is not squarely in line with Tennessee's, Kentucky law does not so contravene Tennessee public policy that it reflects bad morals or works to prejudice Tennessee citizens. The mere fact that this motion highlights a discrete difference between the two products liability acts does not warrant application of the public policy exception.

**D. Conclusion**

In these circumstances, the Court finds that *lex loci delictus* is the proper choice-of-law rule under Tennessee law and that this is not occasion for the public policy exception. Applying *lex loci*, Kentucky substantive law controls, precluding Tennessee's ten-year statute of repose in product liability actions. Accordingly, defendant Lockheed's motion for summary judgment is denied.

questions. Indeed, as explained above, it has specifically rejected this method of analysis. To follow *Boudreau* would be to circumvent clear statements by this state's highest court. Moreover, it would deprive *lex loci* of the uniformity which the Tennessee Supreme Court has found so persuasive. Such a path is not appropriate for a federal court hearing a diversity claim.

**13.** *See* Tenn.Code Ann. § 29–28–108 *and* Ky.Rev.Stat.Ann. § 411.320. It is at least arguable

that Kentucky imposes a more difficult burden on the plaintiff in this regard. In Tennessee, an alteration must be "unforeseeable," whereas Kentucky requires only that it be "unauthorized." Further, Kentucky has imposed upon the plaintiff a duty to exercise ordinary care in using the product, Ky.Rev.Stat.Ann. § 411.320(3); the Tennessee Code contains no such requirement.