**Darcel V. MASSARD, Petitioner,**

v.

**SECRETARY OF the DEPARTMENT OF HEALTH AND HUMAN SERVICES, Respondent.**

No. 91–916V.

United States Claims Court.

March 3, 1992.

Stephen C. Swain, Virginia Beach, Va., attorney of record for petitioner.

Vincent J. Matanoski, Washington, D.C., with whom was Asst. Atty. Gen. Stuart M. Gerson, for respondent.

## ORDER

HARKINS, Senior Judge:

Petitioner, Darcel V. Massard, seeks review in the United States Claims Court under the National Vaccine Injury Compensation Program (the Program) of a special master's decision, unpublished, filed October 4, 1991. The special master's order dismissed the petition with prejudice as untimely.

The Program was established in 1986 as part of the National Childhood Vaccine Injury Act, Pub.L. No. 99–660, Title III, § 311(a), 100 Stat. 3755. Amendments in 1987, 1988, 1989 and 1990, changed substantially procedures applicable to the functions of special masters, and review of decisions of special masters. Provisions governing the Program, as amended through November 3, 1990, are contained in 42 U.S.C.A. §§ 300aa–10 through 300aa–34 (West 1991). Further amendments, not applicable to this case, were made in the Health Information, Health Promotion and Vaccine Injury Compensation Amendments of 1991, Pub.L. No. 102–168, 105 Stat. 1102 (Nov. 26, 1991). For convenience, further reference to the Program in this order will be to the relevant subsection of "42 U.S.C.A. § 300aa–___."

The petition was dismissed with prejudice pursuant to Section 16(a)(1) which, in retrospective cases, requires a petition to be filed by February 1, 1991. Section 16(a)(1) in relevant part provides:

> In the case of a vaccine set forth in the Vaccine Injury Table which is administered before the effective date of this subpart, [October 1, 1988], if a vaccine-related injury or death occurred as a result of the administration of such vaccine, no petition may be filed for compensation under the Program for such injury or death after the expiration of 28 months after the effective date of this subpart ... [February 1, 1991].

Darcel V. Massard was born in Washington, D.C., on January 30, 1957. In August 1957, she was administered a polio vaccine and in September 1957, she was diagnosed as having polio, and was hospitalized. Since that time she has suffered multiple deformities and weakness involving the right lower extremity as a result of polio. She has undergone several procedures with respect to those polio deformities. Her current diagnosis is that she continues to be markedly handicapped by severe residuals of poliomyelitis involving the right lower extremity.

Petitioner contends that she did not learn of the existence of the Program until on or about January 16, 1991. Thereafter she had difficulty in finding qualified counsel, and difficulties in obtaining necessary records to support a claim under the Pro-

gram. The petition for compensation was filed on February 13, 1991.

The Vaccine Injury Table (Section 14) lists Polio Vaccines. Since the vaccine was administered before the effective date of the Program (Oct. 1, 1988), the case is a "retrospective" case.

Initially, in retrospective cases, the filing deadline was 24 months from October 1, 1988. In the 1990 amendments, Congress extended the filing deadline for retrospective cases from 24 months to 28 months.

Pursuant to RUSCC Appendix J, a motion for review of the October 4, 1991, dismissal order was filed on October 22, 1991, and a response in opposition was filed November 21, 1991.

## DISPOSITION

■ A special master's decision may not be disturbed by the Claims Court unless the court finds it to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law. The 1989 Amendments defined the Claims Court function in a review of a special master's decision in Section 12(e)(2), as follows:

> (2) Upon the filing of a motion under paragraph (1) with respect to a petition, the United States Claims Court shall have jurisdiction to undertake a review of the record of the proceedings and may thereafter—
>
> > (A) uphold the findings of fact and conclusions of law of the special master and sustain the special master's decision,
> >
> > (B) set aside any findings of fact or conclusion of law of the special master found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law and issue its own findings of fact and conclusions of law, or
> >
> > (C) remand the petition to the special master for further action in accordance with the court's direction.

The report of the Conference Committee on the 1989 Amendments emphasized that an appeal to the Claims Court was to be "under very limited circumstances." The report states:

> The Conferees have provided for a limited standard for appeal from the master's decision and do not intend that this procedure be used frequently but rather in those cases in which a truly arbitrary decision has been made.

H.R.Conf.Rep. No. 101–386, 101st Cong., 1st Sess., at 517, *reprinted in* 1989 U.S.Code Cong. & Admin.News 3112, 3120.

This limited scope of review is tailored to the concepts and objectives of the Program. The standard "arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law" is based on one of the criteria established by the Administrative Procedure Act (APA). 5 U.S.C. § 706 (1988). To the extent consistent with Program objectives to be attained through the Office of Special Masters, decisions interpreting the APA standard have application in a review of a special master's decision.

■ At issue in this case is the meaning of Section 16(a)(1). The special master's decision that the statute requires dismissal with prejudice is a conclusion of law. Under the APA standard, conclusions of law are considered de novo. *Rice v. Wilcox,* 630 F.2d 586, 589 (8th Cir.1980). On issues of law, recognition should be given to the special master's expertise in the development of the procedures in this novel Program. A decision on issues of law applicable to the Program should be overturned only when error is unmistakably clear.

■ Petitioner does not contest that the statute requires a pre-Act petition to be filed no later than February 1, 1991. She claims, however, the special master erred in the conclusion that she had not shown good cause for the tolling of the limitations of February 1, 1991, under equitable principles established by the Supreme Court in *Irwin v. Veterans Administration,* —— U.S. ——, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990), *rehearing denied, Irwin v. Dept. of Veterans Affairs,* —— U.S. ——, 111 S.Ct. 805, 112 L.Ed.2d 865 (1991).

Historically, in cases against the Government that involved a statutory filing dead-

line, cases that involved application of the principles of equitable tolling, waiver, and estoppel were decided on an ad hoc basis. In *Irwin*, the Court observed the results had not been entirely consistent and the procedure resulted in unpredictability. *Irwin* afforded the opportunity "to adopt a more general rule to govern the applicability of equitable tolling in suits against the government." 111 S.Ct. at 457.

In cases involving private parties, federal statutory time limits customarily had been held to be subject to equitable tolling. In such cases, the Supreme Court has held that the doctrine "is read into *every* federal statute of limitations." *Hardin v. City Title & Escrow Co.*, 797 F.2d 1037, 1040 (D.C.Cir.1986) citing *Holmberg v. Armbrecht*, 327 U.S. 392, 397, 66 S.Ct. 582, 585, 90 L.Ed. 743 (1946) (emphasis in the original). In cases against the Government, however, strict construction of waivers of sovereign immunity supported rulings that the doctrine of equitable tolling "has no applicability to claims against the sovereign." *Soriano v. United States*, 352 U.S. 270, 275, 77 S.Ct. 269, 273, 1 L.Ed.2d 306 (1957). The traditional approach to cases involving sovereign immunity is that waivers are construed narrowly and exceptions are not to be implied. *See Library of Congress v. Shaw*, 478 U.S. 310, 106 S.Ct. 2957, 92 L.Ed.2d 250 (1986) and *United States v. Mottaz*, 476 U.S. 834, 841, 106 S.Ct. 2224, 2229, 90 L.Ed.2d 841 (1986).

In *Irwin*, the Supreme Court held that in a case against the Government a failure to file within the statutory period may be excused, and the filing deadline extended, by application of the doctrine of equitable tolling. *Irwin* was an employment discrimination action under Title VII of the Civil Rights Act of 1964, as amended, that involved limitations on actions to contest decisions of the Equal Employment Opportunity Commission (EEOC), 42 U.S.C. § 2000e–16(c). On the facts in *Irwin*, the complaint filed in the district court was determined to be untimely, and the limitations period was not extended by application of equitable tolling concepts.

Against the Government, equitable tolling can be used only when the waiver of sovereign immunity is unequivocally expressed. In such a case, the Government stands in the same position as a private party. The Supreme Court stated:

> Once Congress has made such a waiver, we think that making the rule of equitable tolling applicable to suits against the Government, in the same way that it is applicable to private suits, amounts to little, if any, broadening of the congressional waiver. Such a principle is likely to be a realistic assessment of legislative intent as well as a practically useful principle of interpretation. We therefore hold that the same rebuttable presumption of equitable tolling applicable to suits against private defendants should also apply to suits against the United States. Congress, of course, may provide otherwise if it wishes to do so.

111 S.Ct. at 457.

In a suit against the Government "no more favorable tolling doctrine may be employed against the Government than is employed in suits between private litigants." 111 S.Ct. at 458.

One result of the *Irwin* decision is to bring into cases against the Government the analytical baggage that has characterized application of tolling doctrines in litigation between private parties in federal courts in cases that involve state-borrowing principles as well as cases that involve direct application of the federal limitations. The equitable tolling doctrine as between private litigants has been extended only sparingly. Examples cited by the Court where equitable tolling was allowed included situations where the claimant actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where the defendant has been induced or tricked into allowing the filing deadline to pass. On the facts of the *Irwin* case, the Court noted that the principles of equitable tolling do not extend "to what is at best a garden variety claim of excusable neglect." 111 S.Ct. at 458.

Application of tolling principles in private litigation was examined in depth in *Cada v.*

*Baxter Healthcare Corp.*, 920 F.2d 446, 450–53 (7th Cir.1990) (Age Discrimination in Employment Act, 29 U.S.C. §§ 621 et seq.). Analysis involves distinguishing between the *accrual* of a claim, and the *tolling* of the statute of limitations. Accrual is a date on which the statute of limitations begins to run; not the date on which the wrong that injured plaintiff occurs, but the date when plaintiff discovers that he has been injured.

▆ Tolling doctrines stop the statute of limitations from running, even if the accrual date has passed. Tolling doctrines may include incapacity, fugitive status, equitable estoppel in a limitations setting, as well as equitable tolling. Equitable tolling permits a plaintiff to avoid the bar of the statute of limitations if despite all due diligence he is unable to obtain vital information bearing on the existence of his claim. Equitable tolling relates to the situation where a cause of action has accrued but the plaintiff cannot obtain information necessary to decide whether the injury is due to wrongdoing and, if so, to wrongdoing by the defendant.

▆ Neither equitable estoppel in the limitations setting, nor equitable tolling, applies to statutes of repose. *Short v. Belleville Shoe Mfg. Co.*, 908 F.2d 1385, 1391 (7th Cir.1990). Neither doctrine applies to a jurisdictional statute of limitations. *Hardin*, 797 F.2d at 1040–41.

In *Menne v. Celotex Corp.*, 722 F.Supp. 662 (D.Kan.1989) (personal injury action against manufacturers) the court defined the differences between the statutes of limitations and statutes of repose as follows:

> Statutes of limitation and repose may be distinguished both by their method of operation and their underlying purpose. Although the two terms have traditionally been used interchangeably, in recent years the term "statute of repose" has been used to distinguish ordinary statutes of limitation from those statutes which begin to run "at a time unrelated to the traditional accrual of the cause of action." F. McGovern, *The Variety, Policy and Constitutionality of Product Liability Statutes of Repose*, 30 Am. U.L.Rev. 579, 584 (1981). Statutes of repose run from an arbitrary event such as the date of a product's purchase, and do not use the date of injury as a factor in computing the limitation period. Statutes of limitation, on the other hand, generally "are much shorter time periods which run from the time the cause of action accrues." *Wayne v. Tennessee Valley Authority*, 730 F.2d 392, 401–02 (5th Cir.1984), *cert. denied*, 469 U.S. 1159, 105 S.Ct. 908, 83 L.Ed.2d 922 (1985) (citing McGovern). *See Myers v. Hayes Intern. Corp.*, 701 F.Supp. 618 (M.D.Tenn.1988).

> . . . . .

> Statutes of limitation and repose may also be distinguished by their respective purposes. In ordinary statutes of limitation, any repose provided to defendants is merely incidental. The main purpose of such statutes is the prevention of stale claims, serving as "instruments of public policy and of court management, [which] do not confer upon defendants any right to be free from liability, although this may be their effect." *Goad v. Celotex Corp.*, 831 F.2d 508, 511 (4th Cir.1987), *cert. denied*, [487] U.S. [1218], 108 S.Ct. 2871, 101 L.Ed.2d 906 (1988) (footnotes omitted). Statutes of repose, in contrast, operate as a grant of immunity serving primarily "to relieve potential defendants from anxiety over liability for acts committed long ago." *Goad*, 831 F.2d at 511.

*Menne*, 722 F.Supp. at 665–66.

In 1991, in a case between private parties that involved limitations on claims under Section 10(b) of the Securities Exchange Act, the Supreme Court made it clear that equitable tolling of limitation periods does not apply to statutes of repose. *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, —— U.S. ——, 111 S.Ct. 2773, 2782, 115 L.Ed.2d 321 (1991).

The special master in his analysis of Section 16(a)(1) concluded that the 4–month extension authorized in the 1990 amendments clearly was intended to serve as a

cutoff for the filing of retrospective cases. The special master's order noted the following legislative history:

> The addition of 4 months to the 24–month limitations period was explained by Representative Waxman as follows:
>
>> Section 5(e) amends section 2116 of the Public Health Service Act. Paragraph 1 extends the filing deadline for petitions [in retrospective cases] from 24 months to 28 months. The committees have agreed to such a change because they have received complaints that the limited publicity given to the program may have left some legitimately eligible petitioner unaware of the program's availability. 136 Cong.Rec. 9729 (daily ed. Oct. 16, 1990).

This analysis is correct. The 4–month extension satisfies the requirements of a statute of repose, and equitable tolling may not be applied to that extension period.

■ The special master also determined that even if application of equitable tolling principles would be appropriate, on the facts, petitioner could not prevail. The special master considered petitioner's explanation as being "only garden variety excusable neglect." Excusable neglect is limited to "unique and extraordinary circumstances." *Reinsurance Co. of America v. Administratia Asigurarilor de Stat,* 808 F.2d 1249, 1251–52 (7th Cir.1987).

Petitioner's affidavit attached as an exhibit to the petition was signed on January 28, 1991. Petitioner makes no explanation as to why the February 13, 1991, petition could not have been filed two weeks earlier. Where required records are unavailable, the Program nevertheless permits a petition to be filed providing it is accompanied by an affidavit stating such records are unavailable. Section 11(c)(3).

### CONCLUSION

On the basis of the foregoing, petitioner's objections to the special master's decision are rejected. The conclusion of law that Section 16(a)(1) requires a dismissal with prejudice on the facts of this case is upheld. The Clerk is directed to dismiss the petition in accordance with the special master's decision.