**Roy Anthony STEVENS, Petitioner,**

v.

**SECRETARY OF the DEPARTMENT OF HEALTH AND HUMAN SERVICES, Respondent.**

No. 90–2510V.

United States Court of Federal Claims.

Feb. 25, 1994.

John R. Brydon, Long Beach, CA, attorney of record, for petitioner.

Gerard W. Fischer, Torts Branch, Civil Div., U.S. Dept. of Justice, Washington, DC, attorney of record, for respondent, with whom were attorneys at the U.S. Dept. of Justice and the Asst. Atty. Gen., Civil Div.

## OPINION

HORN, Judge.

This case comes before the United States Court of Federal Claims [1] on petitioner's mo-

---

1. Petitioner filed a petition which was intended to initiate an action in the United States Claims Court. Following the enactment of the Court of Federal Claims Technical and Procedural Im-

**14**

tion, as filed by John R. Brydon, counsel of record for petitioner, to review the decision of Special Master Elizabeth Wright, dated June 2, 1993, regarding a claim filed pursuant to the National Childhood Vaccine Compensation Program (hereinafter "Vaccine Program").[2]

### FACTS

Petitioner's counsel, John R. Brydon, filed a petition in the United States Court of Federal Claims, pursuant to the National Childhood Vaccine Injury Act of 1986, 42 U.S.C. § 300–aa (1988) (hereinafter "Vaccine Act"). The petition was captioned "Roy Anthony Stevens, Petitioner[3] v. Secretary of Health & Human Services." The case was stamped "FILED" by the Clerk's Office on October 1, 1990, and assigned case number 90–2510V. According to the words of the petition filed by counsel, John E. Brydon, petitioner Roy Anthony Stevens claimed:

to suffer injuries from a Diphtheria–Tetanus–Toxoid–Pertussis vaccine (hereinafter "DTP")/Mumps–Measles–Rubella vaccine (hereinafter "MMR") *and/or* Polio vaccine (hereinafter "OPV/IPV") administered *on or before* the effective date of the above law, resulting in seizure disorders; encephalopathy; hypotonic-hyporesponsive collapse *and/or* polio or other injury caused

by said vaccine and who suffers residual effects therefrom.

(Emphasis added). The original petition filed with this court also stated:

(1) Petitioner *and/or* Petitioner's minor *son/daughter* was born *on or before* the effective date of the National Vaccine Injury Compensation Act and has received *one of the above-named vaccines* on or before the effective date of said Act. The true and correct identity of said Petitioner *is not yet known* but as soon as *his/her* identity has been established, an amendment to this Petition will be promptly filed.

(Emphasis added). Petitioner further informed the court in the original petition that:

Petitioner *and/or his son/daughter* was the product of an uneventful pregnancy for the purposes of any injuries claimed herein and was also found to be a normally developing child as pertains to any claimed injury or death in this Petition.

(Emphasis added).

Moreover, the petition, filed by attorney Brydon, includes the following factual allegations regarding the petitioner Roy Anthony Stevens:

(3) Petitioner and his/her son/daughter received the first administration of DTP/MMR and/or OPV/IPV vaccine on or before the effective date of the National Vac-

---

provements Act of 1992, Pub.L. No. 102–572, 106 Stat. 4506, the United States Claims Court was renamed the United States Court of Federal Claims. The United States Court of Federal Claims is the successor to the United States Claims Court in all respects, including the application of the Rules of the United States Court of Federal Claims (RUSCFC). *See* this court's General Order No. 33.

**2.** Tit. XXI, § 2112, as added Nov. 14, 1986, Pub.L. No. 99–660, tit. III, § 311(a), 100 Stat. 3761; and amended Dec. 22, 1987, Pub.L. No. 100–203, tit. IV, §§ 4303(d)(2)(A), 4307(3), 101 Stat. 1330–222, 1330–224, Pub.L. No. 100–203, tit. IV, §§ 4307(3)(C), 4308, as amended and added July 1, 1988, Pub.L. No. 100–360, tit. IV, § 411(*o*)(2), (3)(A), 102 Stat. 808; Dec. 19, 1989, Pub.L. No. 101–239, tit. VI, § 6601(d)–(i), 103 Stat. 2286–2290; Nov. 3, 1990, Pub.L. No. 101–502, § 5(b), 104 Stat. 1286; Nov. 26, 1991, Pub.L. No. 102–168, tit. II, § 201, 105 Stat. 1102; Oct. 27, 1992, Pub.L. No. 102–531, tit. III, § 314, 106 Stat. 3508; June 10, 1993, Pub.L. No. 103–43, tit. XX, § 2012, 107 Stat. 214; Aug. 10,

1993, Pub.L. No. 103–66, tit. IV, § 13632, 107 Stat. 312; Dec. 14, 1993, Pub.L. No. 103–183, tit. VII, § 708, 107 Stat. 2242.

**3.** Subsequent events demonstrated that Roy Anthony Stevens was a fictitious name, used by counsel to attempt to initiate a claim in the United States Court of Federal Claims within the statute of limitations period established under the Vaccine Act. Examination of the records in the Clerk's Office of the United States Court of Federal Claims reveals that attorney John R. Brydon also filed the following, additional original petitions on behalf of fictitious persons: *Otto Ralph Johns v. Secretary of HHS*, No. 90–2502V; *James Edward Martin v. Secretary of HHS*, No. 90–2503V; *Carolyn Ann Green v. Secretary of HHS*, 90–2504; *Ronald Lee Banks v. Secretary of HHS*, No. 2505V; *Peter Joseph Brown v. Secretary of HHS*, No. 90–2506V; *Richard James Clarke v. Secretary of HHS*, 90–2507V; *Matthew John Peters v. Secretary of HHS*, No. 90–2508V; *Donald George Riley v. Secretary of HHS*, 90–2509V; *John Peter Smith v. Secretary of HHS*, No. 90–2513V.

cine Injury Compensation Act and within the applicable time period set forth in the Vaccine Injury Table or as a direct result of the administration of said vaccine as established by competent medical testimony, suffered from seizure disorders; encephalopathy; hypotonic-hyporesponsive collapse and/or polio as a direct result of the administration of said vaccine and suffered injury and/or death as a result thereof.

(4) Petitioner contends that Petitioner and/or Petitioner's minor son/daughter suffered a seizure disorder/encephalopathy/hypotonic-hyporesponsive collapse and/or polio, which symptoms arose/or did not arise within the applicable time limits of the Vaccine Injury Table (42 U.S.C. § 300aa–14) and that residual disabilities and/or death resulted from those injuries.

(5) Petitioner did not learn of the existence of the National Vaccine Injury Compensation Act within a sufficient time to file within 24 months of the effective date of said Act due to Respondent's failure to discharge his statutory responsibility to make said program known to the public/medical profession and/or bar to allow Petitioner to file this Petition in Petitioner's own name. Petitioner was also unable to obtain qualified legal representation within sufficient time to file a Petition on or before the expiration of 24 months of the effective date of the subject act. Respondent is therefore estopped to deny Petitioner the right to bring this Petition either on his or her own behalf or on behalf of his/her minor son/daughter.

(6) Petitioner has expended in excess of $1,000 of unreimbursed medical expenses and has never received compensation in the form of an award or settlement for the injury and/or death claimed herein, nor has a lawsuit against the manufacturer or administrator of the vaccine in question ever been filed.

Attached to the October 1, 1990 petition is a declaration signed by counsel, John R. Brydon. In this signed and sworn affidavit, counsel states that he is "attorney of record for the purposes of this petition," and includes among other assertions that:

7. "I am informed and believe that Petitioner herein, *whose name is currently not known,* has a valid and potential good faith claim under the National Vaccine Injury Compensation Act, but said Petitioner could not timely file a petition because he or she did not know about the Act or was unable to make contact with an attorney in sufficient time to protect *his or her rights* other than to have a petition such as this filed."

8. "I am further informed and believe that such Petitioner has either personally received, or had a son/daughter receive a DPT/MMR and/or OPV/IPV vaccine on or before the effective date of the Act and that a Vaccine Table or medically relatable injury and/or death occurred as a result of said vaccine."

(Emphasis Added).

On August 21, 1992, counsel John R. Brydon filed a First Amended Petition, together with three volumes, which contain Exhibits 1 through 13, and a "Notice" of the filing of the exhibits. On the face of the amended petition, counsel Brydon used Case Number 90–2510V, the number assigned to the petition filed with the court on October 1, 1990, and captioned Roy Anthony Stevens. In the first amended complaint and exhibits filed on August 21, 1992, however, attorney Brydon captioned the documents "David K. Burton and Jo E. Burton on behalf of the deceased minor child, Jamie J. Burton, petitioners."

Counsel Brydon stated as the purpose for the amended petition:

Petitioners hereby amend the Petition herein by deleting all 8 references to the fictitious person, Roy Anthony Stevens, and inserting the proper names of David K. Burton and Jo E. Burton, as the legal representative of their deceased minor child, Jamie J. Burton, actual individuals.

As if changing the name of the petitioner in the caption, and substituting several new petitioner names, while still utilizing the same docket number, were permissible and routine, counsel for the petitioner proceeded to describe to the court in the amended petition new facts regarding petitioner Jamie J. Burton's medical history. According to the amended petition, Jamie Burton was first

administered the "DPT" vaccine on May 14, 1973. Within 24 hours Jamie appeared fussy, had acquired a fever and was crying relentlessly. Jamie began to experience seizures and was taken to the hospital emergency room. Jamie continued to experience seizures on a regular basis for seventeen years and was hospitalized on several occasions. Jamie was subjected to testing, sometimes painful, throughout her life. Despite medical treatment, petitioners state that the doctors were never able to control the frequency, duration, or intensity of Jamie's seizures. According to the amended petition, Jamie Burton died on August 21, 1990, as a result of positional asphyxiation caused by her seizure disorder.

Petitioners allege in their amended complaint that the death of Jamie Burton is an on table injury because she suffered a seizure disorder within 24 hours of administration of her DPT vaccine, and suffered continuous seizures and other medical difficulties, including death, as a sequela thereof. Further, the amended petition informs that petitioners have never received compensation for Jamie's injury or death, nor have lawsuits been filed against the manufacturer or administrator of the vaccine on her behalf.

Special Master Wright dismissed the petition for case number 90–2510V, with prejudice, on August 31, 1993, pursuant to Vaccine Rule 21(c). The special master stated:

The petition, as filed, was devoid of most of the requirements for filing a petition as specified by the statute. In fact, the petition, as filed under the name of Roy Anthony Stevens, is tantamount to a fraudulent filing and demonstrates a blatant disrespect by Mr. John Brydon, petitioner's counsel, for this court and the Program.... It is clear, then, that Roy Anthony Stevens is not even án existing individual with a colorable claim under the Act, but merely a fictitious name used in an unscrupulous attempt to preserve a claim prior to the petition filing deadline.

\* \* \* \* \* \*

It appears that counsel has attempted, in a most devious manner, to do that which the Act does not permit—file an action out of time. In his attempt, counsel has engaged in an unethical and unprincipled pursuit. Moreover, the undersigned is aware of at least two other such generic filings by Mr. Brydon under the Program. Such conduct on the part of counsel is outrageous and intolerable. As a result, counsel's unethical actions here will call into question his ability to effectively represent any future clients under the Program.

On September 23, 1993, petitioners filed a motion for reconsideration of the special master's order of dismissal filed on August 31, 1993, requesting that the special master consider the Burton petition on the merits. Counsel Brydon ascribes his procedural approach on petitioners' counsel's perception of the gross under-publication of the Vaccine Injury Compensation Program. Counsel relies on Federal Rules of Civil Procedure (Fed.R.Civ.P.) 15(c) and 17(a) for the proposition that substitution of the petitioners Burton for the fictitious "Roy Anthony Stevens" was proper. Petitioners Burton also claim that because they did not realize their daughter's death was vaccine induced until after the statutory time for filing had run, substitution of parties was "a vehicle by which a legitimately eligible petitioner who was unaware of the program's availability might have an opportunity to have his or her claim heard."

By Order dated September 29, 1993, the special master determined that the petitioners' arguments under Fed.R.Civ.P. 15(c) & 17(a) were without merit because "the Federal Rules of Civil Procedure do not apply to proceedings under the Vaccine Act and, therefore, cannot be considered to apply here." In response to petitioners' argument that the Vaccine Act should be liberally construed "to serve its purpose to extend compensation to all vaccine-injured persons who otherwise fulfill the Act's requirements," the special master noted that "[a] fundamental tenet of interpreting waivers of sovereign immunity is that the court must construe them strictly or narrowly." In dismissing and denying a motion filed by petitioners to reconsider her order, the special master found that "the jurisdictional requirements of the Vaccine Act may not be liberally con-

strued." In conclusion, the special master wrote:

> Therefore, in applying the relevant statutory provisions here, the special master is constrained to find, as noted in the dismissal order of August 31, 1993, that since petitioner did not file the amended claim, which amounted to a new petition, prior to the statutory filing deadline, the amended petition was untimely filed pursuant to Section 16(a)(1).

On September 30, 1993, petitioners filed a motion for review of the special master's dismissal in the United States Court of Federal Claims, pursuant to Rule 23, Appendix J, of the Rules of the United States Court of Federal Claims (RUSCFC), on the grounds that the petition was timely filed because the amended petition should be allowed to relate back to the original filing, or in the alternative, that the doctrine of equitable tolling should apply. In response, defendant argues that the petition was not timely filed and was properly dismissed by the special master.

After a thorough review of all the pleadings submitted by the parties, the orders of the special master, and the law applicable in the above-captioned case, this court concludes that the special master was correct when she dismissed the petition. Accordingly, the petitioners' motion for review is, hereby, **DENIED.**

### DISCUSSION

As originally enacted, the Vaccine Act provided for *de novo* review of the factual findings of the special master by the judges of the United States Claims Court. *Donovan v. Sec'y DHHS*, 28 Fed.Cl. 459, 462 (1993) (citing *Davis v. Sec'y DHHS*, 19 Cl.Ct. 134, 140–41 (1989)); *see also Bradley v. Sec'y DHHS*, 991 F.2d 1570, 1577 (Fed.Cir.1993) (Plager, J., concurring in part and dissenting in part). Congress, however, amended the Vaccine Act in 1989, to restrict review by the judges of the court, now called the United States Court of Federal Claims, consistent with the arbitrary and capricious standard. 42 U.S.C. § 300aa–12(e)(2) (Supp. I 1989); *see Donovan v. Sec'y DHHS*, 28 Fed.Cl. at 462; *Hale v. Sec'y DHHS*, 22 Cl.Ct. 403, 415 (1991).

Currently, the Vaccine Act provides that when a motion to review a special master's decision is filed pursuant to 42 U.S.C. § 300aa–12(e)(2), the judges of the United States Court of Federal Claims may:

> 2) Upon the filing of a motion under paragraph (1) with respect to a petition, the United States Claims Court shall have jurisdiction to undertake a review of the record of the proceedings and may thereafter—
>
> (A) uphold the findings of fact and conclusions of law of the special master and sustain the special master's decision,
>
> (B) set aside any findings of fact or conclusion of law of the special master found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law and issue its own findings of fact and conclusions of law, or,
>
> (C) remand the petition to the special master for further action in accordance with the court's direction.

42 U.S.C. § 300aa–12(e)(2). With only minor word differences, Vaccine Rule 27 of the Court of Federal Claims repeats these same statutory directives.

The language of both the Vaccine Act and the Vaccine Rules is clear that decisions of a special master may only be set aside by a judge of the Court of Federal Claims if the decision of the special master was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. 42 U.S.C. § 300aa–12(e)(2)(B); RUSCFC, App. J, Rule 27(b). In establishing the role of the special masters in their 1989 Amendments to the Vaccine Act, Congress made apparent its desire to make the review of a special master's decision less than a routine event:

> The conference agreement provides for an appeal of the master's decision to the U.S. Claims Court under very limited circumstances. If such a motion for review is filed within the applicable time limits, the Court is then to decide to do one of three things: It may uphold the master's decision; it may set aside any part of the master's decision that is arbitrary capricious, an abuse of discretion, or otherwise not in accordance with law, and may issue its own findings and conclusions, or it may

18

remand the petition for further proceedings by the master.... The Conferees have provided for a limited standard for appeal from the master's decision and do not intend that this procedure be used frequently but rather in those cases in which a truly arbitrary decision has been made.

H.R.Conf.Rep. No. 386, 101st Cong., 1st Sess., 517, *reprinted in* 1989 U.S.Code Cong. & Admin.News 1906, 3112, 3120. The developing case law also supports application of the arbitrary and capricious, abuse of discretion or not in accordance with law standard of review. *Cucuras v. Sec'y of DHHS*, 993 F.2d 1525, 1527 (Fed.Cir.1993); *Hines v. Sec'y DHHS*, 940 F.2d 1518, 1523–24 (Fed. Cir.1991); *Gamache v. Sec'y DHHS*, 27 Fed. Cl. 639, 643 (1993), *aff'd.* 5 F.3d 1505 (Fed. Cir.1993); *Lonergan v. Sec'y DHHS*, 27 Fed. Cl. 579, 579–80 (1993); *Perez v. Sec'y DHHS*, 27 Fed.Cl. 200, 201 (1992) (*citing Stotts v. Sec'y DHHS*, 23 Cl.Ct. 352, 358–61 (1991)).

 The arbitrary and capricious standard of review is a narrow one. *Johnston v. Sec'y DHHS*, 22 Cl.Ct. 75, 76 (1990). *See Cucuras v. Sec'y DHHS*, 993 F.2d at 1527; *Estate of Arrowood v. Sec'y DHHS*, 28 Fed. Cl. 453, 457 (1993); *Bradley v. Sec'y DHHS*, 991 F.2d at 1574; *Perreira v. Sec'y DHHS*, 27 Fed.Cl. 29, 32 (1992). When applying the arbitrary and capricious standard, a reviewing court is not empowered to substitute its own judgment for that of a previous trier of fact. *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416, 91 S.Ct. 814, 823–24, 28 L.Ed.2d 136 (1971). Instead, in determining whether a decision was arbitrary and capricious, a court "must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Id.* Furthermore, "[i]f the special master has considered the relevant evidence in the record, drawn plausible inferences and articulated a rational basis for the decision, reversible error will be extremely difficult to demonstrate." *Hines v. Sec'y DHHS*, 940 F.2d 1518, 1528 (Fed.Cir.1991). *See Lewis v. Sec'y DHHS*, 26 Cl.Ct. 233, 236 (1992); *Murphy v. Sec'y DHHS*, 23 Cl.Ct. 726, 729–30 (1991). Thus, the decision of a special master may be found to be arbitrary and capricious only if the special master:

relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence ... or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

*Hines*, 940 F.2d at 1527 (quoting *Motor Vehicle Mfrs. Ass'n. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983)).

Moreover, according deference to the special master's decision requires that the reviewing court "may not substitute its own judgment for that of the special master if the special master has considered all relevant factors, and has made no clear error of judgment." *Lonergan v. Sec'y DHHS*, 27 Fed.Cl. at 579–80; *Perez*, 27 Fed.Cl. at 201 (citing *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416, 91 S.Ct. 814, 823–24, 28 L.Ed.2d 136 (1971); *Hyundai Elecs. Indus. Co. v. United States Int'l Trade Comm'n*, 899 F.2d 1204, 1209 (Fed.Cir.1990); *Gamalski v. Sec'y DHHS*, 21 Cl.Ct. 450, 451–52 (1990)).

 The special master, in her order of August 31, 1993, dismissed the petition at issue, Case No. 90–2510V, stating that "[t]he petition, as filed, was devoid of most of the requirements for filing a petition as specified by the statute." This court agrees with the special master. 42 U.S.C. § 300aa–11(b) defines the requirements for who may file a petition in the United States Court of Federal Claims under the Vaccine Act:

(b) Petitioners

(1)(A) Except as provided in subparagraph (B), *any person who has sustained a vaccine-related injury, the legal representative of such person if such person is a minor or is disabled, or the legal representative of any person* who died as the result of the administration of a vaccine set forth in the Vaccine Injury Table may, if the person meets the requirements of subsection (c)(1) of this section, file a petition for compensation under the Program.

42 U.S.C. § 300aa–11(b)(1)(A) (1986) (Emphasis added). 42 U.S.C. § 300aa–11(c) delineates the requirements for the petition itself:

(c) Petition content

A petition for compensation under the Program for a vaccine-related injury or death shall contain—

(1) except as provided in paragraph (3), an affidavit, and supporting documentation, *demonstrating that the person who suffered such injury or who died—*

(A) received a vaccine set forth in the Vaccine Injury Table or, if such *person* did not receive such a vaccine contracted polio, directly or indirectly, from another person who received an oral polio vaccine,

(B)(i) if such *person* received a vaccine set forth in the Vaccine Injury Table—

\* \* \* \* \* \*

(ii) if such *person* did not receive such a vaccine but contracted polio from another person who received an oral polio vaccine, was a citizen of the United States or a dependent of such a citizen,

(C)(i) sustained, or had significantly aggravated, any illness, disability, injury, or condition set forth in the Vaccine Injury Table in association with the vaccine referred to in subparagraph (A) or died from the administration of such vaccine, and the first symptom or manifestation of the onset or of the significant aggravation of any such illness, disability, injury, or condition or the death occurred within the time period after vaccine administration set forth in the Vaccine Injury Table, or

(ii)(I) sustained, or had significantly aggravated, any illness, disability, injury, or condition set forth in the Vaccine Injury Table but which was caused by a vaccine referred to in subparagraph (A), or

(II) sustained, or had significantly aggravated, any illness, disability, injury, or condition set forth in the Vaccine Injury Table the first symptom or manifestation of the onset or significant aggravation of which did not occur within the time period set forth in the Table but which was caused by a vaccine referred to in subparagraph (A),

(D)(i) suffered the residual effects or complications of such illness, disability, injury, or condition for more than 6 months after the administration of the vaccine and incurred unreimbursable expenses due in whole or in part to such illness, disability, injury, or condition in an amount greater than $1,000, or (ii) died from the administration of the vaccine, and

(E) has not previously collected an award or settlement of a civil action for damages for such vaccine-related injury, or death,

42 U.S.C. § 300aa–11(c)(1) (Emphasis Added). In each of the above sections and subsections, and throughout the rest of the Vaccine Act, an obvious requirement for filing a petition in the United States Court of Federal Claims is that the individual petitioner filing the claim must be a real person, who has suffered an actual, vaccine induced injury, within the time period set forth in the Vaccine Act.

The original petition filed by counsel Brydon in the name of Roy Anthony Stevens was filed on October 1, 1990. The first amended petition was filed on August 21, 1992. The parties do not dispute that the original petition, titled "Petition for Vaccine Compensation; Declaration of John R. Brydon Re Completeness of Petition for Vaccine Compensation & Unavailability of Obstetrical, Vaccination and Medical records (Exhibit 1) with Proof of Service on Secretary of Health & Human Services," was filed within the statute of limitations time period set forth in the Vaccine Act.[4]

---

4. 42 U.S.C. § 300aa–16(a)(1) of the Vaccine Act, as amended by Pub.L. No. 100–203, tit. IV, § 4302(a), 101 Stat. 1330–221 (1987), required that retrospective petitions be filed by October 1, 1990, Pub.L. No. 99–660, tit. III, § 311(a), 100 Stat. 3756 (1986). As further amended by Pub.L. No. 101–502, § 5(e)(1)(A), 104 Stat. 1285, 1287 (1990), a retrospective petition for compensation under the Vaccine Act must be filed no later than January 31, 1991.

Contained in, and attached to, the original petition filed on October 1, 1990 for the petitioner Roy Anthony Stevens, were declarations by petitioner's counsel that he had personal knowledge of the facts and circumstances related to the captioned case, such as the fact that petitioner "has received one of the above named vaccines on or before the effective date of Said Act," that "Petitioner and/or his son/daughter was the product of an uneventful pregnancy ... and was found to be a normally developing child...." Also indicated in the petition, and attested to by counsel Brydon, were the following factual assertions:

> Petitioner and his/her son/daughter received the first administration of DTP/ MMR and/or OPV/IPV vaccine on or before the effective date of the National Vaccine Injury Compensation Act and within the applicable time period set forth in the Vaccine Injury Table or as a direct result of the administration of said vaccine as established by competent medical testimony, suffered from seizure disorders; encephalopathy; hypotonic-hyporesponsive collapse and/or polio as a direct result of the administration of said vaccine and suffered injury and/or death as a result thereof.

Nonetheless, in spite of all these factual assertions, as attested to by the declaration of petitioner's counsel, documentation in the petition and documentation submitted subsequent to the original petition revealed that, in fact, no person by the name of Roy Anthony Stevens existed. The fictitious nature of petitioner Stevens is demonstrated in a number of ways. In the original petition, filed on October 1, 1990 in the name of Roy Anthony Stevens, the following astounding language appears: "The true and correct identity of said Petitioner is not yet known but as soon as his/her identity has been established, an amendment to this Petition will be promptly filed." [5] Then, on August 21, 1992, petitioners' counsel attempted to amend the original petition, and stated that he was "deleting all references to 'Roy Anthony Stevens,' insert-ing the proper names for 'David K. Burton and Jo E. Burton, as the legal representatives of their deceased minor child, Jamie J. Burton.'" In short, because all the factual allegations contained in the petition captioned Roy Anthony Stevens, which allegedly described his vaccination and injury, were fictitious, in reality, no injury as a result of a vaccination was ever shown to have occurred to Roy Anthony Stevens. Moreover, when attorney John R. Brydon filed the original petition on October 1, 1990, he had not been retained by any client to file the original petition.

Petitioners now argue on this motion for review of the special master's decision that the original petition filed in the name of Roy Anthony Stevens should be considered to have been timely filed because the amended petition, captioned "David K. Burton & Jo E. Burton, on behalf of their minor child, Jamie J. Burton," should be allowed to relate back to the date of the filing of the original petition, or, in the alternative, that the doctrine of equitable tolling should be applied to allow the *Burton* case to be heard. Although the argument is not easy to follow, essentially, petitioners appear to allege that because the original petition was filed within the statutory deadline, the amended complaint, substituting the real party in interest, should be allowed to relate back to the original petition, and should be accepted as filed within the statutory deadline under the Vaccine Act. Therefore, petitioners submit, the special master erred in dismissing their claim.

The special master correctly concluded, however, that "[i]n considering petitioner's motion, the undersigned notes that the Federal Rules of Civil Procedure do not apply to proceedings under the Vaccine Act and, therefore, cannot be considered to apply here." In vaccine cases, the rules which govern filing and prosecuting a petition are contained in Appendix J to the RUSCFC. Rule I of those Rules states:

---

**5.** Attorney John R. Brydon's declaration includes the following language:

> Because petitioners' attorney believed in September, 1990 that some vehicle should be explored to attempt to preserve the right of per-

sons who did not know of the existence of the National Vaccine Injury Compensation Program, 10 petitions were filed for the express purpose of attempting to toll the limitations provisions of the Act.

1. Scope of Rules.

These rules govern all proceedings before the United States Claim Court Office of Special Masters pursuant to the National Vaccine Injury Compensation Program established by 42 U.S.C. § 300aa–10 (West Supp.1991) (Vaccine Act). These rules are to be cited as the Vaccine Rules. In all matters not specifically provided for by the Vaccine Rules, the special master may regulate the applicable practice, consistent with these rules and with the purpose of the Vaccine Act, to decide cases promptly and efficiently. *The RUSCC [RUSCFC]* [6] *apply only to the extent referenced.*

(Emphasis added.) Examination of Appendix J reveals that neither RUSCFC 15 or 17 [7] is specifically referenced in Appendix J.

■ Even if RUSCFC 17(a), which adopts Fed.R.Civ.P. 17(a) in substantially similar language, or Fed.R.Civ.P. 17(a), arguably could be found to apply to the instant case, petitioner's argument still would fail. RUSCFC 17(a) provides:

Rule 17. Parties Plaintiff Defendant; Capacity

(a) Real Party in Interest. Every action shall be prosecuted in the name of the real party in interest. An executor, administrator, guardian, bailee, trustee of an express trust, a party with whom or in whose name a contract has been made for the benefit of another, or a party authorized by statute may sue in that person's own name without joining the party for whose benefit the action is brought. No action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest; and such ratification, joinder, or substitution shall have the same effect

as if the action had been commenced in the name of the real party in interest.

RUSCFC 17(a). The Rule, however, plainly did not envision that an action could be filed in the name of an entirely fictitious person and amended once counsel identifies a client.

Petitioners also argue that Rule 15(c) of the Fed.R.Civ.P. applies to the present action. Once again, the court notes that vaccine cases are governed by Appendix J to RUSCFC and not the Federal Rules of Civil Procedure. Regardless, RUSCFC 15(c), which, although utilizing different language, incorporates part of the substance of Fed. R.Civ.P. 15(c), also would not allow the instant petition to qualify within the Vaccine Act statute of limitations. RUSCFC 15(c) provides:

(c) Relation Back of Amendments.

Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading.

The courts have found that the rationale behind Procedural Rule 15(c) is to ensure that "a party who has been notified of litigation concerning a particular occurrence has been given all the notice that statutes of limitations were intended to provide." *Baldwin County Welcome Ctr. v. Brown*, 466 U.S. 147, 150 n. 3, 104 S.Ct. 1723, 1725 n. 3, 80 L.Ed.2d 196 (1984) (citing 3 J. Moore, Moore's Federal Practice § 15.15[3], p. 15–194 (1984)). The Supreme Court has found that an amendment should be allowed to relate back under 15(c) as long as the amendment relates to the same general conduct, transaction and occurrence as outlined in the original pleading, and the opposing party has had notice from the beginning that petitioner was trying to enforce a claim against it because of the relevant events. *See Tiller v.*

---

6. See footnote 1.

7. RUSCFC 1 establishes the limited applicability of the Fed.R.Civ.P. to cases pending in the United States Court of Federal Claims as follows:

Rule 1. *Scope of Rules*

(a) *Scope.* (1) These rules govern all proceedings in actions filed in the United States Claims Court on or after October 1, 1992, and

all further proceedings in actions then pending....

\* \* \*

(b) *Federal Rules of Civil Procedure.* The Federal Rules applicable to civil actions tried by the court sitting without a jury and in effect on December 1, 1991, have been incorporated in these rules to the extent that they appropriately can be applied to proceedings in this court.

*Atlantic Coast Line Railroad Co.*, 323 U.S. 574, 581, 65 S.Ct. 421, 424–25, 89 L.Ed. 465 (1945). The United States Court of Claims, a predecessor to this court, further explained the Supreme Court's test when it pronounced that even when an amendment is technically a different cause of action from that presented originally, 15(c) will apply, and the amendment will relate back to the original complaint so long as "it is sufficiently closely related to warrant the conclusion that the government received adequate notice of the possibility that it might have to defend against a broader claim." *Snoqualmie Tribe of Indians v. United States*, 372 F.2d 951, 178 Ct.Cl. 570, 588 (1967). Moreover, the *Snoqualmie* court noted that courts can also reject those amendments which would cause prejudicial or unjust results to the adversary. *Id.* 372 F.2d 951, 178 Ct.Cl. at 587 n. 5; *see also Ralcon, Inc. v. United States*, 12 Cl.Ct. 773, 774 (1987).

■ Even applying the above articulated tests to the instant action, it is quite apparent that petitioners' amended petition, filed on August 21, 1992, does not relate back to the original petition filed on October 1, 1990. In the original petition filed in the name of Roy Anthony Stevens, defendant was not provided with any, and certainly not accurate, information regarding the claim of petitioners Burton, and, therefore, the amended petition clearly failed to meet the Supreme Court's requirement of "same general conduct transaction, or occurrence." In fact, it appears that the original complaint accomplished just the opposite: petitioners' original petition did nothing less than mislead the defendant and the court by supplying fictitious facts.

■ Contrary to the arguments of petitioners in the instant action, RUSCFC 15(c) applies to relation back of claims, not of plaintiffs or petitioners. In claiming that Rule 15(c) allows for relation back when a plaintiff is substituted, petitioners cite *Soler v. G & U, Inc.*, 103 F.R.D. 69 (S.D.N.Y.1984), *reversed on other grounds*, 833 F.2d 1104 (2d Cir.1987), a case which cites to C. Wright, A.

Miller & M. Kane, § 1501 at 211 (Supp.1984) for the proposition:

> Further, as long as the original complaint provides defendant with adequate notice of the conduct, transaction, or occurrence upon which plaintiff bases his claim *and the parties before the court remain the same*, it is reasonable to assume that defendant has knowledge of any claim plaintiff might assert in any capacity arising out of the event and dispute.

*Id.* at 76 (emphasis added). This quote harms petitioners more than it assists them. In the case at bar, a case in which the original petition was filed in the name of a fictitious person, Roy Anthony Stevens, and the purpose of the amended petition was to supply the court with the names of the petitioners subsequently identified by counsel, the parties before the court have not remained the same. Although petitioners argue that the original petition gave defendant adequate notice of the conduct and transaction or occurrence sufficient to warrant later amendment, in fact, the defendant was not provided notice of a specific claim when it was not even informed about who was the opposing party or of any but generic facts applicable to many potential claimants under the Vaccine Act. The special master properly dismissed the petition and properly refused to allow the amended pleading to relate back to the originally filed petition in order to circumvent the statute of limitations included in the Vaccine Act.

In their motion for review, petitioners also assert, in the alternative, that the applicable statute of limitations should be equitably tolled because, according to petitioners' counsel, "[i]n traditional tort litigation liberal rules of equitable tolling and late discovery would normally preserve a litigant's right to pursue a legitimate claim if filed beyond the statute of limitations." Petitioners urge that because the special master did not rule on the merits of the Burtons' claim, this court should "reverse the order of dismissal and have the matter remanded for consideration in light of the applicable procedural and substantive rules relating to amendments and issues involving real parties in interest."[8]

8. In his motion for review and accompanying

memorandum filed with this court, counsel John

The doctrine of equitable tolling allows a plaintiff to avoid a statute of limitations if, despite all due diligence, a plaintiff is unable to obtain vital information bearing on the existence of the claim. *Massard v. Secretary of DHHS*, 25 Cl.Ct. 421, 425 (1992). Equitable tolling relates to the situation when a cause of action has accrued, but the plaintiff cannot obtain information necessary to decide whether the injury is due to wrongdoing and if so, due to wrongdoing by the defendant. *Id.* Federal courts have granted equitable relief only sparingly. *Irwin v. Department of Veteran Affairs*, 498 U.S. 89, 96, 111 S.Ct. 453, 457–58, 112 L.Ed.2d 435 (1990).

The Supreme Court outlined the doctrine of equitable tolling in *Holmberg v. Armbrecht*, 327 U.S. 392, 66 S.Ct. 582, 90 L.Ed. 743 (1946), by adopting "the old chancery rule that where a plaintiff has been injured by fraud and 'remains in ignorance of it without any fault or want of diligence or care on his part, the bar of the statute does not begin to run until the fraud is discovered, though there be no special circumstances or efforts on the part of the party committing the fraud to conceal it from the knowledge of the other party.'" *Id.* at 397, 66 S.Ct. at 585 (citing *Bailey v. Glover*, 21 Wall. 342, 348, 22 L.Ed. 636; *Exploration Co. v. United States*, 247 U.S. 435, 38 S.Ct. 571, 62 L.Ed. 1200; *Sherwood v. Sutton*, 5 Mason 143.). The court in *Holmberg* then directed that "[t]his equitable doctrine is read into every federal statute of limitation." *Holmberg*, 327 U.S. at 397, 66 S.Ct. at 585. Although in *Soriano v. United States*, 352 U.S. 270, 77 S.Ct. 269, 1 L.Ed.2d 306 (1957), the Supreme Court held that in suits against the government, the doctrine of equitable tolling had no applicability to claims against the sovereign because of the strict construction of waivers of sovereign immunity, *id.* at 275–76, 77 S.Ct. at 273–76,[9] that doctrine was overruled in the later case of *Irwin v. Department of Veteran Affairs*, 498 U.S. at 95, 111 S.Ct. at 457. In *Irwin*, a civil rights suit against the government, the issue of equitable tolling was raised regarding whether the plaintiff had filed its complaint within the time required by 42 U.S.C. § 2000e–16(c). The *Irwin* court ruled that the doctrine of equitable tolling could be applicable to toll the statute of limitations, and that in actions against the government the statute of limitations is subject to the rebuttable presumption of equitable tolling as in suits against private plaintiffs, unless Congress provides otherwise. *Id.* at 95–96, 111 S.Ct. at 457–58.

In affirming the Court of Appeals decision, however, the *Irwin* court informed that "the principles of equitable tolling do not extend to what is at best a garden variety claim of excusable neglect." *Id.* at 96, 111 S.Ct. at 458. Moreover, because time limits imposed by Congress in a suit against the United States involve a waiver of sovereign immunity, no more favorable tolling doctrine than between private litigants may be employed. *Id.* Courts have allowed a party to sustain a time-barred claim under the doctrine of equitable tolling in cases such as when a claimant has pursued judicial remedies by filing a defective pleading during the statutory period, or when the complainant has been induced or misled by an adversary's misconduct into allowing the deadline to pass. *Id;*

R. Brydon, also raised an issue for review based on his allegation that "[t]he special master's order of dismissal was entered without notice or opportunity for written consideration and/or hearing in violation of the due process rights of petitioners." Counsel's argument in this regard is no longer valid. In the first place, following the filing of the instant motion for review, the special master had an opportunity to review the substance of petitioners' counsel's arguments when she reviewed and denied counsel's motion for reconsideration of her dismissal order. Moreover, this court has now had the opportunity to review counsel's motion for review and accompanying memorandum, including his narration of the events and his citations to allegedly appropriate authority, as well as all the other arguments and factual documents filed before this judge and before the special master. Therefore, nothing would be gained by remanding to the special master to determine if the petition was timely filed.

9. The traditional approach to the sovereign immunity issue raised in suits against the government is that waivers must be "unequivocally expressed," construed narrowly and exceptions should not be implied. *See United States v. Mottaz*, 476 U.S. 834, 851, 106 S.Ct. 2224, 2234, 90 L.Ed.2d 841 (1986); *see Library of Congress v. Shaw*, 478 U.S. 310, 318, 106 S.Ct. 2957, 2963, 92 L.Ed.2d 250 (1986).

see also *Burnett v. New York Central R. Co.,* 380 U.S. 424, 428, 85 S.Ct. 1050, 1054–55, 13 L.Ed.2d 941 (1965); *Glus v. Brooklyn Eastern District Terminal,* 359 U.S. 231, 234, 79 S.Ct. 760, 762–63, 3 L.Ed.2d 770 (1959). Clearly none of these situations are present in the instant action. The failure to pursue legal rights with due diligence, however, has been less favorably received as a cause to toll a statute of limitations. *Irwin v. United States,* 498 U.S. at 96, 111 S.Ct. at 457–58.

 The Vaccine Act establishes a government waiver of sovereign immunity with regard to suits involving alleged vaccine induced injuries due to a vaccination in cases which comply with the statute. To allow a tolling of the Vaccine Act deadline in the instant case under equitable principles, however, would be an abuse of the doctrine of equitable tolling. To do so might invite attorneys to try to obtain clients by engaging in filing fictitious petitions in a federal court, and, thereafter, to seek out clients who somehow fit a previously filed petition.

### CONCLUSION

The purpose behind the enactment of the Vaccine Act was to offer relief to a group of individuals whose injuries or death qualified them under the terms of that Act for compensation. The accompanying financial appropriation could not be sufficiently large to ensure that all potential retrospective victims whose injuries had occurred prior to the passage of the Vaccine Act, could be compensated. Therefore, the Congress set a specific date, which although extended once by Congress, was to serve as a date beyond which no additional claims would be accepted. If the claims filed by David K. & Jo E. Burton, on behalf of their minor child Jamie J. Burton, had been filed in a timely fashion under the Vaccine Act, perhaps the merits of their claim might have made petitioners eligible for compensation. That is not the issue before this court on the instant motion for review. It is also unfortunate if, as alleged by petitioners' counsel, that these parents were unaware of the relationship between receiving the DPT shot and their daughter's seizure disorder until after the time to file a claim for compensation under the Vaccine

Act had expired. Such a combination of facts certainly creates a sad and ill-fated situation. Nonetheless, the filing deadlines included in the Vaccine Act are jurisdictional and cannot be waived for any petitioner by this court, even in a compelling case.

Attorney John R. Brydon's ill-conceived attempt to file generic cases, including the instant one, in order to attempt to preserve a billet in the Vaccine Program, and to contravene the statutory filing deadlines, was either intended by petitioners' counsel as a generous act towards families who have suffered from a vaccine-caused injury or simply as a mercenary, marketing tactic. Regardless, attorney Brydon's attempt must fail in this federal court in which, prior to filing a petition, counsel is presumed to have familiarized himself with the Vaccine Act and the rules of procedure applicable to the Vaccine Program.

John Brydon's failure to comply with the applicable rules by filing a generic petition in the above-captioned case, in the name of a fictitious petitioner, has placed an unnecessary burden on this court and may perhaps even be viewed as the filing of a frivolous petition. In fact, when Brydon filed the petition captioned Roy Anthony Stevens, counsel had not been retained by an actual petitioner to file a claim in the United States Court of Federal Claims. The fictitious name, Roy Anthony Stevens, seems to have been arbitrarily selected to act as a "John Doe" petitioner to preserve a slot for a yet to be identified male or female vaccine injured claimant. Or as stated by counsel, "the true and correct identity of said Petitioner is not yet known but as soon as his/her identity has been established, an amendment to this Petition will be promptly filed." In the event that future review of petitioners' counsel's conduct is deemed appropriate, the court notes that the sequence of events, as detailed in the papers filed in Case No. 90–2510V, demonstrates that petitioners David K. Burton & Jo E. Burton did not participate in the fictitious filing in the name of Roy Anthony Stevens.

Purely and simply, the petition submitted by David K. & Jo E. Burton, as petitioners on behalf of their deceased minor child Jamie

L. Burton, was untimely filed in the United States Court of Federal Claims, since it was filed after the statutory deadline for filing retrospective claims pursuant to the Vaccine Act. The finding of the special master, dismissing, with prejudice, the petition of the Burtons because it was filed in an untimely fashion, was correct and must be upheld by this court.

IT IS SO ORDERED.